UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| REYNALDO CRUZ-ROBLES,<br>    *Petitioner*,<br><br>v.<br><br>R. STOVER,<br>    *Respondent*. | Case No. 3:23-cv-755 (OAW) |

**RULING ON MOTION TO DISMISS**

Petitioner, Reynaldo Cruz-Robles, filed this habeas corpus petition pursuant to 28 U.S.C. § 2241 seeking a reduction in disciplinary sanctions. In response to the court's order to show cause, Respondent has filed a motion to dismiss the petition. Although informed of his obligation to respond to the motion, *see* Notice, ECF No. 10, Petitioner has not filed a memorandum in opposition to the motion to dismiss. For the following reasons, the Motion to Dismiss is **GRANTED.**

I. **STANDARD OF REVIEW**

Section 2241 affords relief only if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A petition filed pursuant to section 2241 may be used to challenge the execution of a prison sentence. *See Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006). Thus, § 2241 petitions are appropriately used to challenge conditions of confinement or sentence calculations. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (holding that a claim seeking to expunge BOP disciplinary sanctions from a petitioner's record challenges execution of the petitioner's sentence and is properly brought under § 2241).

1

In reviewing a motion to dismiss a petition for writ of habeas corpus, the court applies the same standard as when reviewing a motion to dismiss a complaint under Federal Rules of Civil Procedure 12(b)(6).  See *Spiegelmann v. Erfe*, No. 3:17-cv-2069(VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018); *see also Anderson v. Williams*, No. 3:15cv1364(VAB), 2017 WL 855795, at *5–6 (D. Conn. Mar. 3, 2017) (reviewing motion to dismiss section 2241 petition under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)).  To survive dismissal, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When reviewing a motion to dismiss, the court considers the facts alleged in the petition or complaint, as well as documents incorporated into the complaint by reference and matters of which judicial notice may be taken.  See *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (citing *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021)).  In addition, the court may consider a document not incorporated by reference when "the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (citation omitted).

II. **FACTS**

The facts are taken from the Incident Report and Disciplinary Hearing Officer Report, as those documents recount the facts upon which Petitioner relies in asserting his claim.  On July 9, 2022, at about 5:00 p.m., Officer Shaw was conducting rounds through housing unit J-A.  Incident Report, Ex. 5, at ,1 ECF No. 9-5 (containing a rewritten version of the incident); *see* Incident Report, Ex. 4, at 1, Doc. ECF No. 9-4 (containing

2

original statements regarding the incident).[1] At this time Officer Shaw observed Petitioner sitting on his bunk with another inmate staring at the mattress they were sitting on. *See* Incident Report, Ex. 5, ECF No. 9-5. Upon closer inspection, Officer Shaw realized that Petitioner was looking at a black cellphone. *See id.*

When Officer Shaw approached Petitioner to take the phone, Petitioner shoved him away. *Id.* Officer Shaw responded by activating his body alarm and ordering Petitioner to give him the phone. *See id.* When Officer Shaw moved to grab the phone, Petitioner appeared to throw the phone to the other side of the housing unit to a group of inmates. *Id.* When Officer Shaw went after the phone, Petitioner ran to "the tv room." *Id.*

Petitioner was taken to the Special Housing Unit and a search was conducted to recover the phone, which was found on the roof outside the open window in the unit television room. *See id.* Petitioner was charged with prohibited act 108, possession of a hazardous tool, and prohibited act 224, assault without serious injury. *See id.*

After being advised of his right to remain silent, Petitioner the following statements regarding the incident:

> I did not touch the CO. I had my back towards the CO when he came and I didn't know it was him, he reached for the phone without saying anything and I thought it was another inmate so I blocked his hand with my shoulder. I then pretended to throw the phone which I kept in my hand and when the CO went to look for it I threw it out the window.... He never gave me a direct order. The officer just grabbed me and tried to snatch the phone from me. I didn't realize it was an officer. I'm guilty for the phone and I accept full responsibility. I did not assault the officer.

*Id.* at 3.

The Disciplinary Hearing Officer ("DHO") considered the statements of Petitioner

---

[1] The descriptions of the incidents in the Incident Report and the Rewritten Incident Report are identical except for the time. The rewritten report puts the time at 5:00 p.m. rather than 5:10 p.m.

and his two inmate witnesses but found the officer's statement to be more credible.  *See* Discipline Hearing Officer Report, Ex. 10, at 3–4, ECF No. 9-10.  Petitioner was found guilty of both charges and was sanctioned with forty-one (41) days disallowance of good conduct time, sixty (60) days confinement in disciplinary segregation, 216 days loss of non-vested good conduct time, six-month loss of visiting privileges, and six-month loss of commissary privileges for possession of the cell phone, and 27 days disallowance of good conduct time and three-month loss of commissary privileges consecutive to the other commissary sanction for the assault on staff.  *Id.*

### III.     **DISCUSSION**

Petitioner challenges his disciplinary sanctions as excessively harsh in violation of the Eighth Amendment and seeks restoration of the forfeited good time credits.  *See* Pet. ¶¶ 7–8 (appealing disciplinary charge on ground that sanctions were "excessive and unusual punishment").  According to the petition, Petitioner has appealed this sanction twice, thereby exhausting his administrative remedies.  *See id.*

To violate the Eighth Amendment, Respondent's conduct must "be repugnant to the conscience of mankind" or "incompatible with the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102, 105–06 (1976) (citation omitted) (internal quotations omitted).  To state an Eighth Amendment claim, therefore, Petitioner must allege facts showing that "(1) that the deprivation alleged is 'objectively sufficiently serious' such that the [petitioner] was denied 'the minimal civilized measure of life's necessities,' and (2) that the [respondent] official possessed a 'sufficiently culpable state of mind' associated with the unnecessary and wanton infliction of pain.'"  *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (citation omitted).  More

to the first element, the petitioner must "demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs." *Welch v. Bartlett*, 125 F. App'x 340, 342 (2d Cir. 2005) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996)); *see Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (adopting the ruling of *Sandin* for the proposition that sanctions must be invalidated where it would impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life).

The Bureau of Prisons has established a list of prohibited acts which are divided into four separate categories based on severity: greatest, high, moderate, and low. *See* 28 C.F.R. § 541.3(a). Table 1 of this section lists the available sanctions for each category of prohibited acts. *See* 28 C.F.R. § 541.3(b) tbl.1. Prohibited act 108, possession of a hazardous tool, which includes a cell phone, is classified at the greatest level. *See id.* Available sanctions include forfeiture of "non-vested good conduct time (up to 100%)," and disallowance "ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year." *Id.* (listing penalties under section named "Available Sanctions for Greatest Severity Level Prohibited Acts"). Prohibited act 224, assault without serious physical injury, is classified at the high level. *See id.* Available sanctions include disallowance "ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year." *Id.* (listing penalties under section named "Available Sanctions for High Severity Level Prohibited Acts"). Thus, the sanctions Plaintiff received were within the range of permitted sanctions, albeit at the higher end.

In *Hernandez v. Lindsay*, No. 08-CV-01495(SJF), 2011 WL 3163078 (E.D.N.Y. July 22, 2011), the petitioner challenged his disciplinary sanctions as violating his rights

under both the Due Process Clause and the Eighth Amendment.  The Eastern District of New York rejected both claims noting that the sanctions, which were expressly authorized under section 541.3, were "not atypical" and, therefore, did not violate due process.  *Id*. at *5.  In addition, the court noted that the sanctions were "reasonably calculated to restore prison discipline and security," and "served a clear penological justification, i.e., the effective quelling of this type of behavior."  *Id.* at *6 (citing to *Trammell v. Keane*, 338 F.3d 155, 164 (2d Cir.2003)).  The court concluded that the petitioner had not shown that the sanctions were imposed in deliberate indifference to his health and safety or were objectively serious and, therefore, rejected the Eighth Amendment claim.  *See id.*

Other courts agree, although more frequently in the due process context, that sanctions within the range expressly authorized by Bureau of Prisons regulations are not unconstitutional.  *See, e.g.*, *Wentzel v. Pliler*, No. 21-CV-9245(AT)(JLC), 2022 WL 9798257, at *11 (S.D.N.Y. Oct. 17, 2022) (declining to second guess sanctions imposed by DHO when sanctions were within range of available penalties for the offense); *Wallace v. Ebbert*, 505 F. App'x 124, 125 (3d Cir. 2012) (per curiam) (holding that petitioner's "loss of 458 days of non-vested good conduct time was clearly permissible by this regulation, and, although the loss of 54 days of good conduct time exceeded the 'ordinary' sanction, nothing in Table 1 prohibited the DHO from disallowing a greater percentage of his good conduct time in an effort to deter him from further infractions"); *Del Toro v. Ortiz*, No. 20-1977(CPO), 2022 WL 787948, at *7 (D.N.J. Mar. 15, 2022) (noting that "sanctions do not violate due process when they 'fall within the sanctions in the applicable regulation'" (citation omitted)); *Roberts v. Williams*, No. 21-CV-00085-SPM, 2021 WL 4355398, at *3–4 (S.D. Ill. Sept. 24, 2021) (rejecting claim that sanctions were excessive because prison

6

regulations permit both disallowance of good conduct time and forfeiture of non-vested good conduct time); *Ray v. Masters*, No. 1:15-cv-06712, 2017 WL 975948, at *5 (S.D.W. Va. Feb. 13, 2017) (finding petitioner's claim that sanctions were too severe without merit because sanctions imposed were within range authorized by regulations), *report and recommendation adopted sub nom. Ray v. English*, 2017 WL 971043 (S.D. W. Va. Feb. 13, 2017).

As they were within the range permissible under the regulation, sanctions against Petitioner did not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life nor unquestioned and serious deprivations of basic human needs. Indeed, on appeal, the reviewer held that the sanctions were "commensurate to the severity level of the offense committed and in compliance with policy." Administrative Remedy No. 1141216-A1, Part B – Response, Ex. B, at 2, ECF. No. 1. Thus, imposition of the sanctions is not objectively sufficiently serious under Eighth Amendment review.

Further, the Disciplinary Hearing Officer explained the reasons for imposing the sanctions.

> The action/behavior on the part of any inmate to possess a hazardous tool (e.g. hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device) in any correctional institution seriously jeopardizes the security of the institution and poses a threat to the ability of staff to provide for the safety and security for staff, inmates and the general public as a whole.
>
> The action/behavior on the part of any inmate to assault or attempt to assault another inmate or staff, whether or not serious injury is inflicted, threatens the health, safety and welfare of not only the person(s) involved, but that of all other inmates and staff. Inmates observing the assault may become involved thus creating a larger disturbance for staff to control. Assaults make it difficult to provide security for all concerned. This type of action/behavior cannot and will not be tolerated from any inmate.

> The sanctions imposed by the DHO were taken to let the inmate know that he/she, and he/she alone, will be held responsible for his/her actions/behaviors at all times.

DHO Report, Ex. 10, at 4, ECF No. 9-10.  This explanation shows that the hearing officer did not act with a sufficiently culpable state of mind.

As Petitioner fails to allege facts supporting either component of the Eighth Amendment deliberate indifference standard, his claim fails.

## IV.     **CONCLUSION**

Respondent's Motion to Dismiss, ECF No. 9, is **GRANTED**.  Any appeal from this order would not be taken in good faith.  The Clerk of Court respectfully is asked to please close this case.

IT IS SO ORDERED at Hartford, Connecticut, this 11th day of January, 2024.

/s/
Omar A. Williams
United States District Judge